UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re:<br><br>**CALVERT M. WILSON,**<br><br>　　Appellant,<br><br>　　　　v.<br><br>**ABN AMRO MORTGAGE GROUP,**<br><br>　　Appellee. | Civil Action No.  05-0042 (JDB)<br>(Bankruptcy No. 01-00092) |

**MEMORANDUM OPINION**

Appellant/plaintiff Calvert Wilson ("Wilson") has appealed to this Court from an order issued by the United States Bankruptcy Court for the District of Columbia that denied his emergency motion to enjoin Appellee/Defendant ABN AMRO Mortgage Group ("ABN AMRO Mortgage") from foreclosing on Wilson's property at 1905 2nd Street, NE, Washington, D.C. ("2nd Street Property") and for other related relief.  Because Wilson paid the arrearages on his account and the foreclosure sale was cancelled, ABN AMRO Mortgage has moved to dismiss this appeal as moot.  The Court agrees that in light of events subsequent to the challenged Bankruptcy Court order, this appeal is moot and accordingly must be dismissed.

**BACKGROUND**

Wilson has lodged voluminous materials with the Court, and contends that his action remains alive because the Court can grant various types of relief to him.  However, the facts relevant to the pending motion to dismiss are straightforward and beyond dispute.  Wilson was in

arrears on mortgage payments to ABN AMRO Mortgage on the 2nd Street Property when he filed for Chapter 13 bankruptcy protection in January 2001.  Although his Chapter 13 Plan provided that Wilson would pay his prepetition mortgage arrearages as well as his post-petition mortgage payments, he soon fell behind in his post-petition mortgage payments.

ABN AMRO Mortgage then sought and was granted relief by the Bankruptcy Court in early 2002 in order to enforce its security interest in the 2nd Street Property.  Wilson and ABN AMRO Mortgage then negotiated a further agreement, incorporated in a Consent Order issued by the Bankruptcy Court, under which Wilson would pay his arrearages under an agreed-upon payment schedule.  A dispute subsequently arose as to whether Wilson was receiving credit for payments, whether ABN AMRO Mortgage had refused to accept certain payments, and whether the mortgage amount had been improperly increased.  ABN AMRO Mortgage later determined that Wilson had again defaulted on his post-petition payments, and filed an affidavit of debt with the Bankruptcy Court on June 7, 2004.  When Wilson failed to cure his default in accordance with procedures set by the Consent Order, ABN AMRO Mortgage initiated foreclosure proceedings and scheduled a sale of the 2nd Street Property for September 22, 2004.

Wilson then sought emergency relief in the Bankruptcy Court.  On September 17, 2004, he filed a motion styled as an emergency motion for order staying improper foreclosure of residential real property, other related relief, expedited consideration, and objection to lender's affidavit stating the amount of default.  In that motion, he alleged that the foreclosure was based on an improper allegation of default and cure amount which, in turn, were based on an "unannounced and impermissible artificial increase" in his mortgage.  See Mem. in Supp. of Emergency Mot. at 2. Wilson thus sought to enjoin the foreclosure and the collection of what he contended were artificially increased mortgage payments.  Id.

The Bankruptcy Court held a hearing on October 7, 2004, at which it found that it was undisputed that Wilson had failed to cure his arrears as required under the Consent Order, and that in any event, Wilson did not have sufficient assets to satisfy even that portion of the arrearage that Wilson did not dispute.  Because Wilson was not prepared to pay even the amounts he conceded were owed, and hence could not come into compliance with the Consent Order, the Bankruptcy Court denied the emergency motion.

Wilson alleges that, a few weeks after the hearing, on October 26, 2004, he received a mortgage coupon book from ABN AMRO Mortgage indicating that his monthly payment had been reduced from $1007.74 to $899.00.  Wilson Decl. ¶ 36 (Opp. to Mot. to Dismiss, Ex. 1).  At the same time, ABN AMRO Mortgage continued the foreclosure proceedings, and published a new notice of sale, with foreclosure scheduled for November 17, 2004.  Wilson meanwhile filed a notice of appeal from the denial of his emergency motion, but did not seek a stay.  Prior to the foreclosure sale on November 17, 2004, Wilson paid his arrearage in full, bringing his account with ABN AMRO Mortgage on the 2nd Street Property current.  The foreclosure sale was cancelled, Wilson's mortgage account with ABN AMRO Mortgage remains current, and there is no pending foreclosure on the Second Street Property.

## ANALYSIS

The party invoking a court's jurisdiction bears the burden of establishing its existence. U.S. Ecology, Inc. v. U.S. Dep't of the Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).  The court, in turn, has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," see Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001), which includes the obligation to consider the possibility of mootness.  See Mine Reclamation Corp. v. FERC, 30 F.3d 1519, 1522 (D.C. Cir. 1994).

A case is considered moot either "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." See Powell v. McCormack, 395 U.S. 486, 496 (1969); see also Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir. 1990) (mootness "requires a federal court to refrain from deciding [a case] if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future'"). Mootness is not merely a reflection of practical considerations, it is a constitutional imperative, derived from the enumerated powers that Article III bestows upon the federal judiciary. A litigant must have experienced, or be facing, an actual injury that is both traceable to the defendant and redressable by the court in order to invoke federal court jurisdiction. Allen v. Wright, 468 U.S. 737, 750-51 (1984). Article III restricts the authority of federal courts "to decide questions that cannot affect the rights of litigants in the case before them," confining them to real controversies "admitting of specific relief" rather than hypothetical advisory opinions. North Carolina v. Rice, 404 U.S. 244, 246 (1971). By restricting the subject-matter jurisdiction of federal courts to actual "cases" and "controversies," Article III ensures that the judicial branch will not take on "the rarified atmosphere of a debating society," but rather will remain a forum for resolving legal questions "in a concrete factual context." See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982). As the Supreme Court has put it, "mootness, however it may have come about, simply deprives us of our power to act; there is nothing for us to remedy, even if we were disposed to do so. We are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." Spencer v. Kemna, 523 U.S. 1, 18 (1998).

The case-or-controversy requirement persists at all stages of litigation such as this, and "[t]he parties must continue to have a 'personal stake in the outcome' of the lawsuit," Lewis v.

Continental Bank Corp., 494 U.S. 472, 478 (1990) (quoting Los Angeles v. Lyons, 461 U.S. 95, 101 (1983), and Baker v. Carr, 369 U.S. 186, 204 (1962)).  The question here, then, is whether Wilson continues to have a "personal stake in the outcome" of this appeal -- which requires that he be threatened with "an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."  Lewis, 494 U.S. at 477.

Wilson sought from the Bankruptcy Court an injunction to prevent or stay the scheduled foreclosure sale and to prevent the collection of the artificially increased mortgage payments allegedly giving rise to the default and foreclosure.  The Bankruptcy Court denied that relief, which is the decision on appeal to this Court.  Thereafter, a new foreclosure sale was scheduled, but it was then cancelled when Wilson paid his arrearage.  His account remains current, and no foreclosure is presently scheduled or threatened.  These facts are beyond any reasonable dispute.

There is, the Court concludes, no remaining case or controversy as to the injunction originally sought by Wilson and accordingly the appeal is moot.  The payment of the arrearage by Wilson and resulting cancellation of foreclosure proceedings has eliminated any threat of actual injury redressable by the Court.  The present status of this case is similar to Ideal Realty Co. v. Diamond Realty Co., 561 F.2d 1123 (4th Cir. 1977), where the Fourth Circuit held that appeals from denials of requests for injunctions against tax attachments were moot because the disputed taxes had been voluntarily paid.  Wilson's action in curing his default while this appeal was pending, thereby cancelling the foreclosure sale, has mooted the controversy over the injunctive relief he originally sought against ABN AMRO Mortgage.  Moreover, Wilson states in his declaration that ABN AMRO reduced his mortgage payment after the Bankruptcy Court ruling on the emergency motion.  Wilson Decl. ¶ 36.   There is, simply put, nothing left for this Court to enjoin even were Wilson to succeed on appeal.

Nor does Wilson's dispute with ABN AMRO Mortgage remain justiciable because it is "capable of repetition, yet evading review." For that exception to mootness to apply, the challenged action must be too short to be fully litigated and there must be a reasonable expectation that Wilson will again be subjected to the same action. See Murphy v. Hunt, 455 U.S. 478, 482 (1982) (per curiam) (quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975)). Turning first to the foreclosure sale -- the primary object of Wilson's emergency motion -- both elements are lacking. Plainly, Wilson's challenge to ABN AMRO Mortgage's right to proceed with a foreclosure sale was fully litigated through the lengthy proceedings before the Bankruptcy Court culminating in the emergency motion proceeding. Moreover, his bankruptcy case remains open as an available forum for any such future challenge. And equally important, the laws of the District of Columbia specifically require thirty (30) days notice of a foreclosure sale, to enable a judicial challenge, see D.C. Code § 42-815(b), and also provide for a period to tender a cure before a scheduled sale, see D.C. Code § 42-815.01(b). Finally, the controversy could only recur if Wilson were to decide to stop making mortgage payments, a voluntary, speculative occurrence that is hardly a basis for an exception to mootness. See Mikkilineni v. City of Houston, 2003 WL 22480033 at *1 (D.C. Cir. 2003).

As to the artificially increased mortgage payments that allegedly gave rise to the default and foreclosure, that, too, is not within the exception. Wilson provides no explanation as to how any future improper increases in mortgage payments will evade judicial review, nor can the Court discern one. Indeed, he has a separate civil action pending before the Court concerning whether the past increases, and other associated actions by ABM AMRO Mortgage, were unlawful. See Wilson v. ABM AMRO Mortgage Group, Inc., Civil Action No. 05-0108 (D.D.C.).

Wilson's sole response to the clear case for application of the mootness doctrine is to point to <u>other</u> relief that this Court could order regarding his underlying mortgage with ABN AMRO Mortgage, including an injunction ordering ABN AMRO Mortgage to remit excess sums in Wilson's escrow account and declaratory relief as to the validity of a refinancing transaction and transfer of a security interest to an ABN AMRO Mortgage affiliate.  But there is no doubt that the emergency motion, the denial of which forms the sole basis of this appeal, sought only to enjoin or stay the scheduled foreclosure sale and the artificially increased mortgage payments giving rise to the foreclosure.  Wilson cannot expand this appeal to include other issues, and the relief available from the Court on this appeal could not address such matters.  Hence, the unsupported expansion of the scope of the emergency motion proceeding and this appeal that Wilson now attempts cannot prevent the clear application of the mootness doctrine based on Wilson's payment of the arrearages on his account and the cancellation of the foreclosure sale.

## **CONCLUSION**

For the foregoing reasons, the motion to dismiss of Appellee/Defendant ABN AMRO Mortgage will be granted and this appeal from the Bankruptcy Court will be dismissed as moot. A separate order will be issued with this opinion.

       /s/
JOHN D. BATES
United States District Judge

Dated:   September 30, 2005

Copies to:

Rawle Andrews, Jr.
ANDREWS & BOWE, PLLP
1717 K St., NW, Suite 600
Washington, DC 20036
Email:  randrews@andrewsgroup.org
    *Counsel for appellant*

David L. Permut
Sallie Fairlight Pullman
GOODWIN PROCTER LLP
901 New York Ave., NW, Suite 900
Washington, DC 20001
Email:  dpermut@goodwinprocter.com
       spullman@goodwinprocter.com
    *Counsel for appellee*

Cynthia A. Niklas
4545 42nd St., NW, Suite 211
Washington, DC 20016
    *Trustee*